**Wilma O'BRYAN, Parent and Next Friend of John C. O'Bryan, Plaintiff,**

v.

**VOLKSWAGEN OF AMERICA, INC. and Volkswagen AG, Defendants.**

**Civ. A. No. 89–0059–O(CS).**

United States District Court, W.D. Kentucky, at Owensboro.

Aug. 4, 1992.

---

F. Thomas Conway, White, Conway & Adams, Louisville, KY, for plaintiffs, Wilma O'Bryan, Parent and Next Friend of John C. O'Bryan, and John C. O'Bryan.

Michael Trent Lee, Bennett, Bowman, Triplett & Vittitow, Owensboro, KY, for intervening plaintiff, State Farm Mut. Auto. Ins. Co.

William D. Grubbs, Mary Jo Wetzel, Woodward, Hobson & Fulton, Louisville, KY, for defendants, Volkswagen of America, Inc. and Volkswagen AG.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This matter is before the court on motion of the defendants, Volkswagen of America, Inc. and Volkswagen AG (hereinafter collectively "Volkswagen"), for reconsideration of this court's denial of their motion for partial summary judgment.

Volkswagen sought summary judgment in this products liability action to the extent that the claims of the plaintiff, Wilma O'Bryan, Parent and Next Friend of John C. O'Bryan (hereinafter "O'Bryan"), sought to establish liability based upon the lack of a manual lap belt for the driver's seat in O'Bryan's 1987 Volkswagen Jetta.

In our memorandum opinion of February 11, 1992, we held that:

1. O'Bryan's common law claims were not expressly preempted by the provisions of the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1392(d);

2. A genuine issue of material fact existed with respect to Volkswagen's compliance with the minimum performance requirements of Federal Motor Vehicle Safety Standard 208 ("FMVSS 208").

Volkswagen argued that O'Bryan's claims relating to lack of a manual lap belt were impliedly preempted by FMVSS 208 and its enabling legislation, the Safety Act. We noted in our opinion that implied preemption arises where there is an actual conflict between a state statute, regulation or common law rule and a federal regulatory scheme. Volkswagen claimed that its choice not to utilize a manual lap belt with its automatic seat belt protection system could not be challenged by O'Bryan via a state common law claim because the federal regulatory scheme, as set out in the pertinent part in FMVSS 208, permitted Volkswagen to make such a choice.

It was unclear from Volkswagen's earlier memoranda as to which of the three FMVSS 208 seat belt options it contended it had certified compliance. Further, Volkswagen's purported compliance was disputed in some aspects by O'Bryan. Thus, our analysis of the implied preemption argument was not necessitated.

FMVSS 208 allows automobile manufacturers to market vehicles in which the manufacturer has installed a passenger protection system which is certified as meeting the requirements of any of three designated options. The options are delineated as:

1. Frontal/angular automatic protection system (S4.1.2.1);

2. Head-on automatic protection system (S4.1.2.2); and

3. Lap and shoulder belt protection system with belt warning (S4.1.2.3).

The manufacturer is required to certify compliance with all applicable federal motor vehicle safety standards.

█ Volkswagen's ability to preclude a challenge to its choice of option under the federal scheme is dependent upon its showing that it met the requirements of the federal regulations with respect to its choice of option. Only when Volkswagen has shown that it complied with the regulations can it claim, under an implied preemption theory, that a state common law challenge to its federally authorized choice in its design would frustrate the administrative scheme provided by federal law.

There was some confusion in the defendant's explanation of its purported compliance with FMVSS 208. The briefs and argument addressed both Option 1 and Option 2. We addressed both options in our memorandum opinion of February 11, 1992, finding that a genuine issue of material fact existed with respect to Volkswagen's compliance with either option.

Volkswagen has asked the court to reconsider our ruling and find that it complied with Option 2. Option 2 states:

S4.1.2.2 *Second option—head-on automatic protection system.* The vehicle shall—

(a) At each designated seating position have a Type 1 seat belt assembly or Type

2 seat belt assembly with a detachable upper torso portion that conforms to S7.1 and S7.2 of this standard.

(b) At each front outboard designated seating position, meet the frontal crash protection requirements of S5.1, in a perpendicular impact, by means that require no action by vehicle occupants;

(c) At each front outboard designated seating position, meet the frontal crash protection requirements of S5.1, in a perpendicular impact, with a test device restrained by a Type 1 seat belt assembly; and

(d) At each front outboard designated seating position, have a seat belt warning system that conforms to S7.3.

Volkswagen states that it substituted an automatic belt as permitted by S4.5.3 for the Type 1 or Type 2 seat belt assembly required in Option 2. S4.5.3 provides:

S4.5.3 *Automatic belts.* Except as provided in S4.5.3.1, a seat belt assembly that requires no action by vehicle occupants (hereinafter referred to as an "automatic belt") may be used to meet the crash protection requirements of any option under S4. and in place of any seat belt assembly otherwise required by that option.

S4.5.3.1 An automatic belt that provides only pelvic restraint may not be used pursuant to S4.5.3 to meet the requirements of an option that requires a Type 2 seat belt assembly.

S4.5.3 states that an automatic belt may be used to meet the crash protection requirements of any option under S4. Volkswagen argued in its original motion, without providing any documentation in support, that when it utilized an automatic belt in place of a Type 1 or Type 2 belt under Option 2, it was required to meet only the crash protection requirement of S5.1 in a perpendicular impact.

In looking at the safety requirements of the various options, we reasoned from a common sense standpoint that NHTSA intended the options to be equally stringent in their testing requirements. Option 1 requires a protection system to meet the lateral crash protection requirements of S5.2 and the roll-over crash protection requirements of S5.3.

An alternative to those requirements is the use of a Type 1 or Type 2 seat belt under either Option 1 or Option 2. We noted in our opinion that Type 1 and Type 2 seat belts have certain built-in protections inasmuch as the very design of those belts, as set out in FMVSS 209, requires that they provide pelvic restraint "designed to remain on the pelvis under all conditions, including collision or roll-over of the motor vehicle." We found it reasonable to assume, therefore, that a permissible substitution for a Type 1 or Type 2 seat belt would require equivalent safeguards in the substitute in order to "meet the crash protection requirements of any option under S4," as required by S4.5.3.

Volkswagen has now come forward with evidence, in the form of a number of agency interpretations, establishing that NHTSA has not interpreted "the crash protection requirements" of Option 2 to include the Type 1/Type 2 seat belt feature of "pelvic restraint designed to remain on the pelvis under all conditions, including collision or roll-over of the motor vehicle." In other words, NHTSA has not required that an automatic belt substituted under S4.5.3 be an equivalent belt to the Type 1 or Type 2 seat belt it is replacing in either design or performance. The automatic belt must only meet the frontal crash protection requirements of S5.1 in a perpendicular impact. See Exhibit A to Volkswagen's Motion to Reconsider. The January 30, 1974 notice published at 39 FR 3834 (Volkswagen's Exhibit B to Motion for Reconsideration) stated specifically:

Option two exists, in fact, to accommodate the introduction of passive restraint systems like Volkswagen's which cannot yet meet all requirements of option one.

The United States Supreme Court has instructed that a reviewing court should give effect to the agency's interpretation of its own regulations; that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations. *Martin v. Occupational Safety and Health Review Commission,* 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1992), citing *Ehlert v. United States,* 402 U.S. 99, 105, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1971), and *Northern*

*Indiana Public Service Co. v. Porter County Chapter of Izaak Walton League of America, Inc.,* 423 U.S. 12, 15, 96 S.Ct. 172, 173, 46 L.Ed.2d 156 (1975).

Volkswagen has demonstrated through agency interpretative letters that NHTSA viewed its own regulations as providing that compliance with Option 2 required a manufacturer to meet the frontal crash requirements of S5.1 in a perpendicular impact when substituting an automatic belt for a Type 1 or Type 2 seat belt under S4.5.3. The affidavit of Michael Finkelstein, a former associate administrator of NHTSA, supplements the agency's interpretation. He stated that "NHTSA was satisfied that the a [sic] 1987 VW Jetta equipped with a Volkswagen passive restraint system complied with both the requirements and the intent of the NHTSA regulations pertaining to occupant crash protection." Finkelstein affidavit, ¶ 4.

We next consider whether this agency interpretation conforms to the purpose and wording of the regulations.

■ A plain reading of the regulations does not preclude the interpretation rendered by the agency. In fact, the interpretation appears consistent with the agency's expressed purpose of accommodating the introduction of passive restraint systems. The agency's interpretation of its own regulations sensibly conforms to their wording and the purpose expressed by the agency. It cannot be said to be at odds with the policy explaining the purpose of S4.5.3, the regulation which allows the substitution. We must therefore give effect to the agency interpretations. We find that in order for Volkswagen to substitute its automatic belt under S4.5.3, it was required to meet the frontal crash protection requirements of S5.1 in a perpendicular impact, as set out in FMVSS 208, S4.1.2.2(b) and (c).

■ O'Bryan has not challenged nor has she come forward with evidence to directly controvert Volkswagen's contention that its system met the frontal crash protection requirement of S5.1, as delineated under Option 2. The bald statement that "as the court will see in the trial of this action, the system adopted by Volkswagen was inferior

and they had trouble meeting the frontal crash protection requirements with their passive system containing a single belt attached to the door," (O'Bryan's Memorandum in Opposition to Volkswagen's Motion for Reconsideration at p. 10), is insufficient to survive a summary judgment motion. O'Bryan has submitted the affidavit of Lynn L. Bradford, a former senior official at NHTSA, which states, in pertinent part, that:

1. No defect investigation was conducted by NHTSA into the restraint system of the particular system in the 1987 Volkswagen Jetta;

2. In NHTSA frontal impact testing conducted with 1975–model VW Rabbits equipped with similar systems, some restraints failed to meet the criteria of FMVSS 208; and

3. The responsibility for exercising due care in the design and manufacture of safe vehicles and for certifying compliance with the regulations rests with Volkswagen.

These assertions do not create a genuine issue of material fact with respect to Volkswagen's satisfaction of the frontal crash protection requirements of Option 2 or its certification of compliance with FMVSS 208.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 151–60, 90 S.Ct. 1598, 1605–1609, 26 L.Ed.2d 142 (1970); *Felix v. Young,* 536 F.2d 1126, 1134 (6th Cir.1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. *Id.* 477 U.S. at 247, 106 S.Ct. at 2510. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present some significant probative evidence which makes it

necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir.1962).

The contentions in the Lynn Bradford affidavit that NHTSA did not perform any defect investigation with respect to the Jetta, that compliance was Volkswagen's responsibility, and that Volkswagen had some problem with the system when used in the 1975 Rabbit, are not responsive to the issue asserted on summary judgment: that Volkswagen certified compliance with FMVSS 208 and that its system in the 1987 Jetta met the frontal crash protection requirements of S5.1 in a perpendicular impact, as set out in S4.1.2.2(b) and (c).

▮ Upon complying with the requirements of FMVSS 208, Volkswagen was permitted by the federal regulation to market its wholly automatic system. The question then becomes whether a recovery on O'Bryan's common law claims against Volkswagen for its choice not to utilize a manual lap belt in its protection system (*i.e.*, to market a wholly automatic system) would frustrate the administrative scheme provided by the federal law.

The United States Court of Appeals for the Eleventh Circuit, in *Taylor v. General Motors*, 875 F.2d 816, 827 (11th Cir.1989), found the ruling in *Fidelity Federal Savings and Loan Association v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), governed in its implied preemption analysis:

> *de la Cuesta* governs this case. It holds that a state common law rule cannot take away the flexibility provided by federal regulation, and cannot prohibit the exercise of a federally granted option. *See id.* In accordance with *de la Cuesta*, we conclude that a state common law rule that would, in effect, remove the element of choice authorized in Safety Standard 208 would frustrate the federal regulatory scheme. We therefore hold that appel-

lants' theory of recovery is impliedly preempted by Safety Standard 208 and the Safety Act.

*Taylor*, 875 F.2d at 827. In finding implied preemption, the court noted that:

> In the 1974 amendment to the Safety Act, Congress expressly approved the right of an automobile manufacturer to comply with the Safety Act either by installing manual seat belts or passive restraints.... consistent with Congress' 1974 mandate, the regulations promulgated under the Safety Act authorized automobile manufacturers to choose one of three different methods to comply with the safety standards for occupant crash protection....

*Taylor*, 875 F.2d at 826. The court concluded that Taylor's theory of recovery, a strict liability or negligence claim for failure to equip an automobile with an air bag, was impliedly preempted.

Similarly, in another "air bag case," the United States Court of Appeals for the First Circuit stated in *Wood v. General Motors Corp.*, 865 F.2d 395, 409 and 412 (1st Cir. 1988):

> We think it plain that Wood's action, if successful, would stand as an obstacle to Congress's chosen *method* of increasing automobile safety.... While "courts should not lightly infer preemption," Wood's product liability action must bow to the supremacy of federal law because it disturbs the Safety Act's allocation of authority between the federal government and the states.

The court noted:

> While "the purpose and scope" section of a federal standard may well be the starting point in defining "aspect of performance," the inquiry cannot end there. In our view, resort must be had to the specific requirements and categories of the standard....
> Congress, in enacting the Safety Act, set up a clear division of authority between the states and the federal government. If the federal government has not issued a safety standard on a certain aspect of performance, the states are allowed to set their own standards in these areas. However, Congress decided that once the federal

government had promulgated a standard, the states' usual role in setting safety standards was subordinated in the interest of national uniformity. When a federal standard is in effect, the states are prohibited from establishing a nonidentical standard....

This division of authority between state and federal government was part of Congress's chosen method for implementing the Safety Act....

Thus, although Wood's air bag suit is not expressly preempted by the Safety Act, it is impliedly preempted because it presents an "actual conflict" with the Safety Act—specifically because it "stands as an obstacle" to Congress's determination that safety is best served by having uniform national standards.

■ We find that O'Bryan's claim relating to Volkswagen's lack of a manual lap belt mounts essentially the same attack on the federally sanctioned choice of option as did the claims relating to lack of an air bag in *Taylor* and *Wood.* In the air bag cases, the plaintiffs sought to penalize the defendants for choosing not to incorporate a passive component in their protection system. Here, O'Bryan would have Volkswagen penalized for choosing not to incorporate a manual component in its passive protection system. As was found in the air bag cases, the federal scheme provides manufacturers the choice among the three options and a proper exercise of that choice cannot be undermined by a lawsuit seeking civil liability on that basis.

The motion for partial summary judgment has sought only limited preclusion of O'Bryan's claims. Volkswagen seeks summary judgment insofar as O'Bryan's claims are based upon the lack of a manual lap belt in the Volkswagen passive restraint system. Volkswagen is entitled to judgment on this limited issue.

A separate order will be entered this date in conformity herewith.

### ORDER

For the reasons set forth in the memorandum opinion entered herein this date, and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that:

1. The memorandum opinion and order of February 11, 1992 is vacated only insofar as it (a) finds that "a genuine issue of material fact exists with respect to the matter of compliance with the crash protection requirements of the second option," (b) finds that "nothing in S4.5.3 relieved Volkswagen from meeting the safety requirements of the belts which it replaced in the second option," and (c) orders that the motion for partial summary judgment is denied.

2. The memorandum opinion herein is supplemental to and should be read in conjunction with those portions of the memorandum opinion and order of February 11, 1992 which have not been vacated.

3. The motion of the defendants, Volkswagen of America, Inc. and Volkswagen AG, for reconsideration is **GRANTED.**

4. Partial summary judgment is **GRANTED** for the defendants, Volkswagen of America, Inc. and Volkswagen AG, only insofar as the plaintiff, Wilma O'Bryan, Parent and Next Friend of John C. O'Bryan, seeks to establish liability of the defendants based upon lack of a manual lap belt in O'Bryan's 1987 Volkswagen Jetta.