Mario ALVARADO; Fidel Alvarado, Jr.; and Alicia Alvarado, Individually and As Next Friends of Fidel Alvarado, III, a Minor, Appellants,

v.

HYUNDAI MOTOR COMPANY; Hyundai Motor America, Inc.; and Port City Hyundai, Inc., Appellees.

No. 04–91–00208–CV.

Court of Appeals of Texas, San Antonio.

Aug. 9, 1995.

Rehearing Overruled Sept. 18, 1995.

Steve T. Hastings, Rose Rivera Vela, Allison & Huerta, Corpus Christi, Christa Brown, Austin, for appellants.

Eduardo Roberto Rodriguez, Rodriguez, Colvin & Chaney, L.L.P., Brownsville, Ruth Greenfield Malinas, Frank Montalvo, David M. Prichard, Ball & Weed, P.C., San Antonio, David M. Heilbron, Leslie G. Landau, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, David E. Keltner, Haynes and Boone, L.L.P., Fort Worth, Thomas H. Crofts, Jr., Crofts, Callaway & Jefferson, P.C., San Antonio, Armando X. Lopez, Laredo, Lee Casstevens, Wood, Burney, Cohn & Bradley, Corpus Christi, for appellees.

Before STONE, HARDBERGER and REEVES,[1] JJ.

## OPINION

HARDBERGER, Justice.

This product liability case involving the seat belt design of a Hyundai car raises the

---

[1]. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Tex Gov't Code Ann. § 74.003(b) (Vernon 1988).

question of whether there has been federal preemption of seat belt design. If there has been preemption then a common law negligence or products liability lawsuit is prohibited by the supremacy clause of Article VI of the United States Constitution. The trial judge ruled that there was preemption and granted a partial summary judgment accordingly. This appeal is from that ruling, and this opinion deals solely with the question of preemption.

## Procedural History of the Case

Following the trial court's granting of the partial summary judgment, the Plaintiffs took a non-suit. The trial court entered the nonsuit order with prejudice to those claims addressed in the partial summary judgment order. The Alvarados appealed. First, they said they were entitled to take a nonsuit without prejudice because the partial summary judgment was interlocutory and they took it timely. Their second ground of appeal was substantive: that no claims were preempted. This court agreed with the first point and never reached the preemption issue. *See Alvarado v. Hyundai Motor Co.,* 885 S.W.2d 167 (Tex.App.—San Antonio 1994). The Texas Supreme Court reversed, holding that "Once a judge announces a decision that adjudicates a claim, that claim is no longer subject to the plaintiff's right to nonsuit." *See Hyundai Motor Co. v. Alvarado,* 892 S.W.2d 853, 855 (Tex.1995). The Court then remanded this case back to this court for consideration of the preemption question.

## Factual Review

Mario Alvarado, a high school student, was injured on February 17, 1989 while riding as a passenger in the front seat of a 1988 Hyundai Excel when it overturned. Alvarado was thrown from the car when the sunroof opened. He received serious injuries which rendered him a paraplegic. The seatbelt system in a Hyundai Excel at that time was a "two-point" system which did not include a lap belt. Alvarado filed a product liability and negligence suit saying the Hyundai was a defective automobile because its seatbelt restraint system did not restrain. Hyundai's defense, among other things, was that their

system was in compliance with applicable federal standards and that common law claims are preempted. It was upon these grounds that a partial summary judgment in favor of Hyundai was granted.

## Preemption Standards of Review

Preemption power arises from Article VI of the Constitution, sometimes referred to as the Supremacy Clause. It says that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. Art. VI, cl. 2. The Supreme Court has held that state law that conflicts with federal law is "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). "... the purpose of Congress is the ultimate touchstone of preemption analysis." *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978).

■ The purpose, or intent, of Congress may be express or implied. The leading Texas case on preemption, *Moore v. Brunswick,* 889 S.W.2d 246 (Tex.1994), *cert. denied,* — U.S. —, 115 S.Ct. 664, 130 L.Ed.2d 599 (1994), sets out the ways that federal law may supersede state laws:

1. Congress may explicitly state its intent to preempt in the language of the statute itself.

2. Preemption may be implied when federal law is so pervasive that there is no room for state law.

3. State law is preempted if it conflicts with federal law. If it is impossible to comply with both laws, it conflicts.

*See Moore,* 889 S.W.2d at 247, 248.

■ Preemption by the federal government is a serious inroad into the right of a state to make its own law, whether it be legislative enactment or common law. Therefore the preemption cases are interlaid with admonitions against an overeagerness to find preemption.

Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by

... Federal Act unless that [is] the clear and manifest purpose of Congress."

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). There is a "strong presumption against pre-emption". *Cipollone*, 505 U.S. at 523, 112 S.Ct. at 2621. The applicable statute upon which preemption claims are based must be "narrowly construe[d]". *Id.* at 523, 112 S.Ct. at 2621.

> The lessons of *Cipollone* are that the preemption defense will be applied narrowly, that preemptive language of a statute or regulation will be interpreted strictly, and that few state-law damage claims will be preempted.

*Moore*, 889 S.W.2d at 250.

"Preemption should not be lightly inferred" because of "the significant state interest." *Id.* at 251. In his concurring opinion in *Cipollone*, Justice Blackmun stated:

> Our precedents do not allow us to infer a scope of preemption beyond that which clearly is mandated by Congress' language.... We resort to principles of implied pre-emption—that is, inquiring whether Congress has occupied a particular field with the intent to supplant state law or whether state law actually conflicts with federal law (cites omitted) only when Congress has been silent with respect to pre-emption ... we cannot find the state common-law damages claims at issue in this case pre-empted by federal law in the absence of clear and unambiguous evidence that Congress intended that result.

*Cipollone*, 505 U.S. at 531, 112 S.Ct. at 2625.

Justice Blackmun explains that the Court's reluctance to find preemption where Congress has not spoken expressly and clearly is founded in the principles of federalism and respect for state sovereignty. He concludes:

> We do not, absent unambiguous evidence, infer a scope of pre-emption beyond that which clearly is mandated by Congress' language.

*Id.*, at 533, 112 S.Ct. at 2626.

The overall language in *Cipollone* is so strongly against implied preemption as to be called by learned commentators a death knell to implied preemption claims in automobile passive restraint claims. *See* Chadwell, *Automobile Passive Restraint Claims Post–Cipollone: An End To The Federal Preemption Defense*, 46 Baylor Law Review 141 (1994).

Keeping in mind the admonitions and guidance of both the U.S. Supreme Court and the Texas Supreme Court, we turn now to an analysis of the National Traffic and Motor Vehicle Safety Act of 1966 (Act) and the attendant Federal Motor Vehicle Safety Standard (Standard).

### Analysis of the Act and Standard

The Act of 1966 is an instructive example of what happens when the government imposes mandatory standards on a politically and financially powerful industry. The government makes bold pronouncements, considerable resistance is encountered, the government falls back, time limits come and go with liberal extensions, the party in power has their impact, yet gradually things do change. But not without a struggle. Standard 208 is the applicable standard in this case. It was first promulgated in 1967 and deals with occupant restraint when there is a collision. Virtually every provision has been fought over; most have been changed, sometimes many times. Standard 208, which deals with seat belts and airbags, is long, complicated, constantly in a state of change and difficult to read and understand. For example, the regulations on airbags, which were first mentioned in 1969 when comments were solicited on the merits of the airbags, triggered the following:

> This was the first of approximately sixty NHTSA rulemaking notices imposing, amending, twice rescinding, and twice reimposing a passive restraint requirement. The airbag controversy, once commenced, would prove to have a life of its own, outlasting seven presidents, at least eight heads of the Department of Transportation, and more than eight Administrators of the National Highway Traffic Safety Administration.

*Chadwell, supra,* at 145.

It is little wonder that the parties to this litigation can find much to disagree upon in

deciding what Standard 208 says and whether Hyundai had complied with the applicable provisions with the seat belts that they installed in this car in 1988. It underscores though why both the U.S. and Texas Supreme Courts do not favor implied preemption unless preemption "clearly is mandated by Congress' language." *Cipollone,* 505 U.S. at 533, 112 S.Ct. at 2626.

■ We must first examine if Congress has expressly preempted cases based on seat belt design. It might be thought that this would involve a simple reading of the statute: either they did or they didn't. But it is not simple because there are provisions that conflict on their face:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a state shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

15 U.S.C.A. § 1392(d) (West 1982).

This is preemption language and is some evidence of Congressional intent to expressly preempt. However, Standard 208 has a savings clause:

> Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under the common law.

15 U.S.C.A. § 1397(k) (West Supp.1992).

The only way to reconcile these two provisions is to interpret the preemptive language to prohibit states from introducing and passing legislation that differs from federal law. The savings clause allows the bringing of negligence and product liability suits because they are brought under the common law. It can certainly be argued that it is all law whether made by the legislature, or by the body of common law, but that is not the way Congress has treated it. The savings law authorizes a common law suit. Therefore, we hold there is no express preemption. No express preemption has been the holding of the great majority of courts to consider the issue, as will be discussed later in this opinion.

### Implied Preemption

■ We agree with Hyundai that implied preemption analysis is required. There is language in *Cipollone* that suggests that implied preemption cannot exist when Congress has chosen to include an express preemption statute. However to the degree that such suggestion was argued, and followed by some courts, this has been dispelled by the recent U.S. Supreme Court case of *Freightliner Corp. v. Myrick,* —— U.S. ——, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995).

> According to respondents and the Court of Appeals, *Cipollone,* (cite omitted) held that implied preemption cannot exist when Congress has chosen to include an express pre-emption clause in a statute. This argument is without merit ... At best, *Cipollone,* supports an inference that an express pre-emption clause forecloses implied pre-emption; it does not establish a rule.

*Id.* at —— ——, 115 S.Ct. at 1487–88.

The Court goes on to say, however:

> Petitioner's pre-emption argument is ultimately futile, however, because respondents' common-law actions do not conflict with federal law ... it is not impossible for petitioners to comply with both federal and state law ...

*Id.* at ——, 115 S.Ct. at 1488.

*Myrick* dealt with antilock braking systems (ABS), and a different standard, Standard 121. The Court pointed out that "As Standard 121 imposes no requirements either requiring or prohibiting ABS systems, tractor-trailer manufacturers are free to obey state standards concerning stopping distances and vehicle stability." *Id.* at ——, 115 S.Ct. at 1488. As there are standards for seat belts under Standard 208, *Myrick* cannot be considered as dispositive of the issues in this appeal although the language is helpful in analysis. For instance, is it an impossibility for Hyundai to comply with Standard 208 and Texas common law? The savings clause in Standard 208, as we have noted,

says that compliance with Standard 208 "does not exempt any person from any liability under common law." *Supra,* sec. 1397(k). The plain meaning of this clause is that a company can be in compliance and still have liability under common law.

■ Hyundai insists that they are in compliance with Standard 208, specifically S4.5.3, which they say, gives them the option to install the two-point VW system. We do not find this as clear a point as Hyundai seems to believe it is. S.4.5.3. says the following:

> ... a seat belt assembly that requires no action by vehicle occupants (hereinafter referred to as an "automatic belt") may be used to meet the crash protection requirements of any option under S4. and in place of any seat belt assembly otherwise required by that option.

S4 states the general requirements to carry out the scope of S1 which "specifies performance requirements for the protection of vehicle occupants in crashes." Three options are set out: (1) a complete passive protection system, (2) lap belt protection system with belt warning, and (3) lap and shoulder belt protections system with belt warning. *Id.* at S4.1.1.1, S4.1.1.2 and S4.1.1.3. These "performance" standards don't seem to authorize any specific design system, and need a broad interpretation to interpret that they specifically authorize Hyundai's two-point system. Standard 208 does not mention this particular type of restraint system. Hyundai, by pointing to an amalgamation of several provisions, argues that their system was in compliance with Standard 208. Pragmatically, this may be so. It is difficult to believe that the government would have allowed the cars to have been sold in mass quantities if the restraint system was not generally in compliance. Standard 208 does authorize, as one of its options, a passive protection system. The Hyundai system is a passive protection system, and, to that extent is authorized. We do not read Standard 208 though as stamping approval of the engineering or safety efficacy of the particular belts in question. We see no mechanism for doing that other than the common law.

## Airbag Case Analysis

■ There have been numerous no-airbag cases over the past 10 years. In these cases the plaintiff's cause of action centers around the premise that the car would have been much safer with airbags, and even though the standards did not require airbags, the manufacturer should have installed them anyway. Manufacturers responded that they were only under the duty to comply with one of the three options set out in Standard 208, and the plaintiff's demand for mandatory air bags deprived them of their federally mandated options. Therefore, the defense was federal preemption. The great majority of the courts agreed with the manufacturer and found preemption. Among the courts finding federal preemption in no-airbag cases are four federal appellate courts and three cases arising out of accidents happening in Texas (two federal district cases and one state case). These cases are as follows:

1. *Pokorny v. Ford Motor Co.,* 902 F.2d 1116 (3d Cir.), *cert. denied,* 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990).
2. *Taylor v. General Motors Corp.,* 875 F.2d 816 (11th Cir.1989), *cert. denied* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990).
3. *Kitts v. General Motors Corp.,* 875 F.2d 787 (10th Cir.1989), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990).
4. *Wood v. General Motors Corp.,* 865 F.2d 395 (1st Cir.1988), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990).
5. *Dallas v. General Motors Corp.,* 725 F.Supp. 902 (W.D.Tex.1989).
6. *Surles v. Ford Motor Co.,* 709 F.Supp. 732 (N.D.Tex.1988).
7. *Marrs v. Ford Motor Co.,* 852 S.W.2d 570 (Tex.App.—Dallas 1993).

All of the above cases, except *Marrs,* predated *Cipollone.* Some learned commentators feel that the *Cipollone* language means that the cases finding preemption were wrongly decided.

In *Cipollone,* the court specifically rejected the implied preemption analysis upon which numerous lower courts have relied

in holding that state law design-defect claims were preempted under the safety act. Thus, *Cipollone* appears to have sounded a death knell for the implied preemption defense in no-airbag cases.

*Chadwell, supra* at p. 142.

Rightfully or wrongly decided, the no-airbag preemption cases cited above have a common theme: there is no express preemption, but there is implied preemption that prevents a plaintiff from requiring a manufacturer to install airbags, when the options of Standard 208 also allowed the seatbelts.

### Pokorny

Ford's argument that Pokorny's common law action is expressly pre-empted by the safety act and Standard 208 is unconvincing ... Pokorny's common law action is not expressly pre-empted ... 902 F.2d at 1120–1121.

However, the court found implied preemption:

... [W]e conclude that Pokorny's action does present an actual conflict with the safety act and Standard 208 to the extent that it alleges liability for Ford's failure to include air bags.... Standard 208 was specifically designed to give automobile manufacturers a choice among several options when providing restraint systems for passengers. The van in which Duffy was killed contained manual safety belts and a buzzer system, one of Standard 208's options. *Id.* at 1123.

### Taylor

Given the conflict between the language of the Safety Act's preemption and savings clauses, and the failure of Congress explicitly to include reference to state common law in the Act's preemption clause, we conclude ... that appellant's claims are not expressly preempted by the Safety Act. 875 F.2d at 825.

But this court, too, found implied preemption, and for the same reason:

... the 1974 amendment to the Safety Act and Safety Standard 208 is unmistakable: it grants automobile manufacturers the option of complying with federal standards for occupant crash protection by installing manual seat belts instead of airbags.... We therefore hold that appellants' theory of recovery is impliedly preempted.... *Id.* at 827.

### Kitts

*Kitts* follows *Wood* (see below) in holding there was no express preemption, but found implied preemption. "Because we believe *Wood* directly addresses and correctly resolves the issue before us, we follow the general principles articulated in *Wood*." 875 F.2d at 789.

### Wood

While we do not find an express preemption, we agree that Wood's claim is impliedly preempted.... For plaintiff Wood to win on her design claim, it must be judicially determined under state law that vehicles like hers are unsafe unless equipped with air bags. That finding is tantamount to announcing a state safety standard (vehicles must have air bags) that differs from the federal safety standard covering the same aspect of performance (viz., the relevant federal standard permits seat belts in lieu of air bags). 865 F.2d at 401.

The three cases arising out of Texas accidents, *Surles, Dallas,* and *Marrs* all have similar language. "Although the safety act does not pre-empt Marr's no-airbag claim, the act impliedly pre-empts it. A no-airbag action presents an "actual conflict" with the act ..." *Marrs*, 852 S.W.2d at 577.

We agree, along with the great majority of courts that have decided the issue, that there is no express preemption in no-airbag cases. We also believe that the implied preemption analysis that is used in determining a no-airbag case is not equivalent to a claim that the design of a seat belt system is defective. The Alvarado claim is not a no-airbag claim. The plaintiff's position is not that there should have been an airbag. It is that the seatbelt design was defective because it was not capable of keeping a person inside the car during a rollover. This claim does no violence to the manufacturer's choice of options under Standard 208. No claim is made

that one option should be used in preference to another option, or that something more than any of the options should have been used. There is no dispute that an airbag was not required at the time this vehicle was built. The fatal flaw in the airbag cases is that an attempt was being made to engraft a requirement on the manufacturer that was in conflict with a federal mandate. Seat belts are specifically mentioned as options under Standard 208. Airbags were not mandated. But seatbelts are a restraint system. A restraint system should restrain under ordinary foreseeable circumstances. This is in harmony with federal law and common sense. To hold otherwise would be to place form over substance. If only the form is important then the state's judicial system is impotent and the courts must be idle bystanders to the carnage of its citizens.

We recognize and accept that state's rights must give deference and obedience to the federal government when there is a conflict. But it is not a conflict for a state to require a safety device to be safe.

The Fifth Circuit case of *Perry v. Mercedes Benz of North America, Inc.,* 957 F.2d 1257 (5th Cir.1992), illustrates the above principles. *Perry,* interestingly enough, also is an airbag case and involved the preemption defense of Standard 208. In distinction from the above no-airbag cases, there was an airbag, but it did not inflate. The plaintiff was injured. The manufacturer defended saying Standard 208 requirements had been met, and therefore there was either express or implied preemption. The Fifth Circuit first lays the general ground rules between express and implied or inferred preemption:

We do not hesitate to find preemption when Congress has expressly stated its intent. But we have a general hesitancy to infer a preemptive intent. Especially as to state regulation of matters of health and safety, 'we start with the assumption that the historic police powers of the States were not to be superseded by the [federal law] unless that was the clear and manifest purpose of Congress.'

*Id.* at 1261.

The court then finds that the defective design claim is not expressly preempted. It goes on to state that Standard 208 is but a minimum standard, and that's the reason for the savings clause. The no-airbag cases are distinguished because they were tort claims that sought to impose liability on the manufacturer for choosing an option that the federal scheme expressly granted them the right to choose. This is a different scenario the court says and the no-airbag cases are inapplicable. Once the regulatory system is in place traditional tort liability applies. This is true because Standard 208 is only a minimum.

We recognize that the manufacturer who chooses to meet only the bare minimum performance requirements will be burdened with the potential for tort liability, but this is the exact burden that Congress preserved in the savings clause, when it stated that "compliance with any federal motor vehicle safety standard ... does not exempt any person from any liability under common law." Congress sought to meet its goal of minimizing the number of deaths and injuries caused by auto accidents by setting forth minimum standards and leaving common law liability in place ... we cannot ignore the Savings clause or find preemption in this case.

*Id.* at 1265 and 1266.

In two recent airline cases involving passenger injuries, the Fifth Circuit consistently was reluctant to find federal preemption of tort claims.

The Supreme Court has repeatedly cautioned that federal courts should not displace state police powers by federal law unless that was the "clear and manifest purpose of Congress."

*Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 338 (5th Cir.1995). Also see similar language and a similar result in *Smith v. America West Airlines, Inc.,* 44 F.3d 344, 346 (5th Cir.1995).

## Seat Belt Cases

There are no cases in Texas on preemption of seat belt design. Therefore, this is a case of first impression in this state. In comparison with no-airbag cases, there are few pre-

emption cases dealing with seatbelts anywhere.

The few seatbelt preemption cases have gone both ways, and both Alvarado and Hyundai can legitimately point to cases that support their viewpoint. These cases are:

1. *Hyundai Motor Co. (Korea) v. Phillip*, 639 So.2d 1064 (Fla.Dist.Ct.App.1994), *cert. denied* — U.S. —, 115 S.Ct. 901, 130 L.Ed.2d 785 (1995).

2. *Garrett v. Ford Motor Co.*, 684 F.Supp. 407 (D.Md.1987).

3. *Miranda v. Fridman*, 276 N.J.Super. 20, 647 A.2d 167 (1994), *cert. denied* 138 N.J. 271, 649 A.2d 1291 (1994).

4. *O'Bryan v. Volkswagen of America, Inc.*, 838 F.Supp. 319 (W.D.Ky.1992).

5. *Dykema v. Volkswagenwerk AG*, 189 Wis.2d 206, 525 N.W.2d 754 (1994).

### Phillip

This is the latest and most authoritative case, having gone to the U.S. Supreme Court this year. It involves the identical car, a 1988 Hyundai Excel, and the identical claim: that the lack of a lap belt made this car defective. Hyundai raised the same preemption defense that it does in Alvarado. The court found that Standard 208 and its enabling legislation, the National Traffic and Motor Vehicle Safety Act did not preempt the plaintiff's claim that the car was defective because of the lack of a lap belt.

> Based on the authority of *Myrick v. Freuhauf Corp.*, 13 F.3d 1516 (11th Cir.1994), *Perry v. Mercedes Benz of N.Am.*, *Taylor v. General Motors Corp.*, *Wood v. General Motors Corp.*, we find that the National Traffic and Motor Vehicle Safety Act does not preempt the plaintiff's common law tort claims against Hyundai.

639 So.2d at 1066 (citations omitted).

We see no differences in facts, claims or defenses between *Phillip* and the instant case. As this decision has been reviewed without comment by the highest court in the land this year, we see no reason to hold differently. Indeed, we think we would be in error to do so.

### Garrett

This case, against Ford, involved abdominal injuries caused by the lap belts being worn at the time of the accident. Ford raised the seatbelt preemption defense, citing Standard 208. The court found the preemption arguments unpersuasive.

> If Congress had intended to expressly preempt state law it presumably would have done so; it certainly would not have included the savings clause ... Because the safety standards were only intended to be bare minimum federal standards, Congress had no intention to preempt common law liability when a manufacturer does not exercise the proper standard of care. To this end it enacted the savings clause which allows for a tort claim even if the minimal standards are met.

684 F.Supp. at 409–411.

### Miranda

This is Hyundai's strongest case. It is a 1994 case, involves a seatbelt claim, and the car was a 1987 Hyundai Excel. The court writing the opinion was an intermediate appellate New Jersey court, but certiorari was denied by the New Jersey Supreme Court. This case, having reviewed Standard 208 and the no-airbag cases, concluded there was express preemption.

> In our view, Congress wrote the savings clause to preserve only the right to sue for product defects not involving the same aspects of performance as addressed by an FMVSS.

647 A.2d at 174.

In our view, *Miranda* cannot be reconciled with *Phillip*. But *Miranda*, in finding there is express, rather than implied, preemption is in a distinct minority of cases to consider the point as is obvious by the discussion of the no-airbag cases above. Further *Miranda* did not reach the U.S. Supreme Court and *Phillip* did. We also simply do not agree with *Miranda* that there is express preemption, especially in view of the savings clause. If Congress had wanted to expressly preempt common law remedies by FMVSS standards, they would have done it. A simple declarative sentence would have done it.

But it's not there, and we decline to put it there for them.

### O'Bryan

This is a Volkswagen case, involving their seatbelt design, and was decided by a federal district court in Michigan. The court found implied preemption in that VW was exercising one of their options under Standard 208.

> As was found in the air bag cases, the federal scheme provides manufacturers the choice among the three options and a proper exercise of that choice cannot be undermined by a lawsuit seeking civil liability on that basis.

838 F.Supp. at 325.

For the reasons explained above in our airbag analysis, we cannot agree that plaintiff's claims in the instant case are the same thing as the no-airbag cases which seek to require the manufacturer to do something more than simply choose among the options available.

### Dykema

This is another Volkswagen case out of the Wisconsin appellate courts that found express preemption. The requirement of Standard 208 "is within the purview of the explicit preemption provision prohibiting states from requiring different restraints." 525 N.W.2d at 758.

This case, too, cannot be reconciled with *Phillip*. For the reasons previously stated, we believe *Phillip* to be the better authority, and we do not agree that there is express preemption when the law doesn't say so, and, in fact, has a provision to the contrary. Surely if Congress wanted to expressly preempt motor vehicle standards they would have simply said so. But they didn't.

### Legislative Intent

Ferreting out an implied legislative intent is murky business. This is true because the intent of the many members of the House and the Senate may be different, even among those voting for the bill. But certainly the principal sponsors' intent is worthy of examination. The Senate sponsor was Senator Warren Magnuson. Senator Magnuson said in floor debate:

> Compliance with Federal standards would not necessarily shield any person from broad liability at the common law. The common law on product liability still remains as it was.

112 Cong.Rec. at 14320 (1966); *see also* 112 Cong.Rec. at 14324.

The House sponsor was John Dingell. Representative Dingell said, in opposing an amendment to put in criminal sanctions:

> We have preserved every single common law remedy that exists against a manufacturer for the benefit of a motor vehicle purchaser.

112 Cong.Rec. 19,663 (1966).

This explanation was helpful in defeating the amendment to put in the criminal sanctions, and it is reasonable to assume that when the sponsor of the bill explained that all common law remedies were preserved, he did not intend the polar opposite.

Secretary Elizabeth Dole was the cabinet member in charge of the motor vehicle standards, and she evidently believed there was no federal preemption. When confronted with the criticism that manufacturers would use the cheapest system to comply with an automatic restraint system, she replied:

> The department does not agree with this contention. It believes that competition, *potential liability for any deficient systems* (emphasis supplied), and pride in one's product would prevent this.

49 Fed.Reg. 2900 (1984).

There would not be any "potential liability" under the implied preemption doctrine. It seems clear to this court that the Department of Transportation thought, as did the House and Senate sponsors of the legislation, that common law rights were being retained, not done away with.

### Conclusion

This exceptionally well briefed and argued case by both parties is unique in that there is an abundance of law to support no preemption and preemption. The enabling statute conflicts on its face. Courts around the

country have struggled with these inherent contradictions, and, indeed, the question is a difficult one.

We are aware that Hyundai has the weight of authority on no-airbag cases. The strong anti-preemption language of *Cipollone,* decided after the great majority of no-airbag cases, however, casts doubt on the precedential value of these cases. We are not called upon, however, in this seatbelt case to make an ultimate decision on the effect of *Cipollone* on the no-airbag cases. With four cases already decided on the federal appellate level, and all of them predating *Cipollone,* this question will not be finally decided until there is a ruling from the U.S. Supreme Court.

Hyundai insists that the no-airbag cases control this controversy. While we agree that some of the language in no-airbag cases is useful, we find the ultimate dispute different. No-airbag cases sought to impose liability because the manufacturer had selected seat belts rather than air bags. This interpretation strips the manufacturer of its option of a federally-mandated choice. The Alvarados are not making such a demand. Their demand of the manufacturer is that the chosen option of a passive belt system should be reasonably effective for the intended use. A restraint system should restrain. If it doesn't it is defective, and liability attaches regardless of what option the manufacturer chooses.

Finding neither express or implied preemption, we reverse the summary judgment and remand the case for trial on the merits.