Lawrence P. **BOUCHET,**
Appellant/Appellee,

v.

The **TEXAS MEXICAN RAILWAY COMPANY,** Appellee/Appellant.

No. 04–93–00421–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 10, 1996.

Rehearing Overruled Feb. 12, 1996.

Robert E. Valdez, Linda Daniels, Robert E. Valdez, P.C., San Antonio, for Appellant.

Guy H. Allison, Leonard Bucklin, Rose Rivera Vela, Allison & Huerta, Corpus Christi, Donato D. Ramos, Person, Whitworth, Ramos, Borchers & Morales, Laredo, for Appellee.

Before CHAPA, C.J., and
HARDBERGER and PEEPLES, JJ.[1]

## OPINION

HARDBERGER, Justice.

The first issue in this appeal is whether a wrongful discrimination question pursuant to Labor Code Sec. 451.001 (formerly Article 8307c of the Texas Workers' Compensation Act) can be given in a case arising under the FELA. The second issue is, if the jury question is procedurally proper, was the discrimination proven as a matter of law, or in the alternative, was there sufficient evidence to uphold the jury's finding of no discrimination. The appellant has limited this appeal pursuant to Texas Rule of Appellate Proce-

dure 40(a)(4) to these issues. The Railroad files a cross-point contesting the rectitude of giving a wrongful discrimination question to the jury.

## Facts

Bouchet was injured on June 29, 1987 while in the course and scope of his employment with the Texas–Mexican Railway Company (Railroad). He timely reported the injury, but continued to work without missing time but with some back complaints. Eventually though in January of 1990, he had to have back surgery. It was the policy of the railroad to provide certain benefits to employees injured in an on-the-job accident. These included a salary continuation, paying the medical bills and travel expenses from Laredo to San Antonio to see the appropriate medical specialists. The Railroad did so in this case until Bouchet filed a lawsuit on December 23, 1991 under the Federal Employers Liability Act (FELA) for personal injuries. After the filing of the lawsuit, the Railroad stopped the salary continuation and stopped paying the travel expenses for Bouchet to see his doctors in San Antonio. Interestingly, the Railroad continued to pay all medical expenses though. On September 4, 1992, Bouchet amended his complaint and asserted that the Railroad had violated Labor Code § 451.001 by terminating company provided benefits after he filed the FELA lawsuit.

After a trial on the merits, the jury found that Bouchet was injured in the course and scope of employment. The jury also found that Bouchet was 80% responsible for his injury; the remaining 20% of fault being assigned to the Railroad. The court submitted a jury issue on violation of Labor Code § 451.001 over the Railroad's objection. The jury found no violation of the Labor Code provision. Bouchet appeals from the trial court's failure to find as a matter of law that the Railroad violated the wrongful discrimination statute. The Railroad's response is that the issue cannot be considered in an FELA claim, and even if it could, the jury found against Bouchet.

1. Justice David Peeples not participating.

## Section 451.001 and FELA

The first issue to be determined is whether a Labor Code § 451.001 question on wrongful discrimination is proper in an FELA case. The Railroad alleges that it is not.

The wrongful discrimination statute provides in part:

A person may not discharge or in any other manner discriminate against an employee because the employee has:

(1) filed a workers' compensation claim in good faith;

(2) hired a lawyer to represent the employee in a claim;

(3) instituted, or caused to be instituted in good faith a proceeding under Subtitle A; or

(4) testified, or is about to testify in a proceeding under Subtitle A.

TEX.LAB.CODE ANN. § 451.001 (Vernon Supp. 1995) (former law at TEX.REV.CIV.STAT.ANN. art. 8307c, § 1).

Article 8307c was enacted in 1971 to give protection to workers, who were sometimes discriminated against, for exercising their rights under the Texas Workmen's Compensation Act. This discrimination most often happened when the injured worker made a claim, or hired an attorney, or instituted a proceeding to recover damages for his/her injury. The legislature, through Art. 8307c, said that "a person ... may not discriminate against an employee" for doing these things. In 1989 the legislature completely rewrote the workers compensation laws of Texas in its S.B. 1. S.B. 1, Acts of the 71st Legislature, 2nd called sess., 1989.

■ S.B. 1 does not contain a wrongful discrimination clause, nor was 8307c rewritten. It remained intact, and was expressly deleted from the bill that did pass and moved to the Labor Code as Section 451.001. Most authorities since that time conclude that the wrongful discrimination statute, § 451.001 is no longer tied to the workers' compensation scheme or statute, but is a separate cause of action. "Discharging an employee for filing a workers' compensation claim is an independent statutory wrong. Rather than being part of a workers' compensation claim, a retaliatory discharge action arises from acts by an employer in the labor-management relation." *Chatman v. Saks Fifth Avenue of Texas, Inc.*, 762 F.Supp. 152, 154 (S.D.Tex. 1991).

■ *Chatman* also points out that, while federal courts are divided over whether to characterize a retaliatory discharge claim as falling under the workers' compensation laws of the State, "The Western District of Texas also has held that retaliatory discharge claims do not arise under the workers' compensation laws of Texas...." *Id.* "A retaliatory discharge claim differs procedurally and substantively from a workers' compensation claim ... A claim for benefits is filed with the Texas Workers' Compensation Commission, while a claim for retaliatory discharge is brought against the employer for her having filed the claim for benefits." *Id.* at 155.

If § 451.001 is not tied to the Workers' Compensation Act, then it applies to subscribing employers and non-subscribing employers alike. There is no philosophical or rational reason to prohibit retaliatory wrongful discrimination by a subscribing employer, but to let all other employers discriminate with impunity. The wrong is the same and the injury to the employee is the same.

Our Supreme Court has not ruled on whether employees of non-subscribers are protected by § 451.001, but it has pointed to a court of appeals opinion where the writ was denied which held that 451.001 applies to subscribers and non-subscribers alike. "We have assumed because we need not decide in this case, that employees of non-subscribers are protected by section 451.001. One court of appeals has suggested they are. *Hodge v. BSB Invs, Inc.*, 783 S.W.2d 310, 312–13 (Tex. App.—Dallas 1990, writ denied)." *Gunn Chevrolet v. Hinerman*, 898 S.W.2d 817, 819 (Tex.1995).

The *Hodge* opinion, referred to by the Supreme Court, is squarely on point: "The use of the broad term "person" by the legislature indicates a purposeful intent not to limit the statute to any one class of employers ... We conclude that article 8307c applies equally to employees of subscribers and

nonsubscribers." *Hodge,* 783 S.W.2d at 312–13.

Section 451.001 is written in broad terms. It says in pertinent part, (emphasis supplied): "*A person* may not discharge or in any other manner discriminate against an employee ..." The language does not limit the class of employers that may not discharge or discriminate. The Railroad's construction of this statute would have the court impliedly add the words to "A person" to say "unless the suit is being brought under federal statute." Whether looking at the literal language, or the policy behind the anti-discrimination statute, such an interpretation is not justified. The idea is to protect all injured employees from discrimination because they were hurt or chose to seek legal redress for their injuries.

It has already been held that the anti-discrimination statute applies to subscriber and non-subscriber alike. *See Hodge,* 783 S.W.2d at 313. That would seem to be all employers in much the same way that it can be said that the world may be divided into those that play the fiddle and those that do not. It is this court's belief that subscriber and non-subscriber describes all employers, even when the injured employee seeks redress under a federal statute.

■ Granted a federal statute, such as this, may preempt all state law. If the FELA had an express preemption clause, or even if it impliedly preempted section 451.001, we would have no hesitation to so find. Federal law may supersede state law in three ways. First, Congress may explicitly state its intent to preempt in the language of the statute itself. Second, preemption may be implied when the federal law is so pervasive that there is no room for state law. Third, state law is preempted if it conflicts with federal law. If it is impossible to comply with both laws, it conflicts. *Moore v. Brunswick,* 889 S.W.2d 246, 247–48 (Tex. 1994). As this court has recently stated: "Preemption by the federal government is a serious inroad into the right of a state to make its own law, whether it be legislative enactment or common law. Therefore the preemption cases are interlaid with admonitions against an overeagerness to find pre-emption." *Alvarado v. Hyundai Motor Co.,* 908 S.W.2d 243, 245 (Tex.App.—San Antonio 1995). We find no preemption, either express or implied, dealing with remedies for prohibited discrimination. We also find no conflict between federal and state law designed to prohibit discrimination against injured workers.

The rest of Section 451.001 describes what acts are covered under the anti-discrimination umbrella applying to all persons. An injured worker may not be discriminated against because the employee has: (1) filed a workers' compensation claim in good faith; (2) hired a lawyer to represent the employee in a claim; (3) instituted or caused to be instituted in good faith under Subtitle A; or (4) testified or is about to testify in a proceeding under Subtitle A. *See* Tex.Lab.Code Ann. § 451.001 (Vernon Supp.1995).

■ There is no question that § 451.001 was originally written to principally correct abuse occurring under the Texas workers' compensation scheme. Subscribers were discriminating against injured employees. But when the question of non-subscribers came before the courts it was held that the law was applicable to non-subscribers as well. *See Hodge,* 783 S.W.2d at 313. Why? Because the rationale of the law and the injured employee's plight was the same. He or she should be able to get the benefits of whatever compensation was due without being penalized. FELA is the exclusive remedy for railroad workers. *See New York C. & H.R.R.R. v. Tonsellito,* 244 U.S. 360, 361–62, 37 S.Ct. 620, 620–21, 61 L.Ed. 1194 (1917); *Dixon v. CSX Transportation, Inc.,* 990 F.2d 1440, 1442 n. 2 (4th Cir.1993). An injured worker should not be penalized for bringing a claim under FELA when that is the only choice the worker had. While it can be argued that the FELA should be in a class by itself and the employer not considered a subscriber, or non-subscriber, we see no persuasive reason to do this. The fact that FELA applies to railroads and is federal in nature does not change anything. The person is still a worker and is filing in good faith for an on the job injury, and should not lose his rights to seek peaceful, legal redress for his injuries. Surely this is as true for a

railroad injury as an oil field injury, or a construction injury.

■ To the degree there is any question of interpretation about a "workers' compensation claim", there can be none as to the anti-discrimination provision of hiring "a lawyer to represent the employee in a claim." When Bouchet hired Robert Valdez, attorney, he was doing what is described in subsection (2). Mr. Valdez was a lawyer representing the injured employee, Bouchet, in pursuing a claim. Bouchet had the right to do this without being discriminated against. We hold that the trial court acted in accordance with Texas law in submitting this question to the jury.

### The Jury's Answer

Having disposed of the correctness of the giving of the question, we go to the finding of the jury. Question No. 5 asked if the Railroad wrongfully discriminated against Bouchet. Unfortunately for Bouchet, they answered "No." Question No. 7 asked if the Railroad acted "willfully or maliciously in discriminating" against Bouchet. Having found no discrimination earlier, they logically answered this "No" also. The issue before this court is whether the answer to question number 5 goes against the great weight and preponderance of the evidence, or even should be determined as a matter of law in favor of Bouchet.

### Great Weight and Preponderance

■ Courts of appeal should use restraint in overturning jury verdicts, lest they simply function as jury number two, which is anathema to our jury system as the ultimate arbiters of fact. *See Wal–Mart Stores, Inc. v. Seale,* 904 S.W.2d 718, 722 (Tex.App.—San Antonio 1995, no writ); *Carr v. Jaffe Aircraft Corp.,* 884 S.W.2d 797, 799 (Tex.App.—San Antonio 1994, no writ). The Railroad argued, with fine advocacy and remarkable candor, the following:

1. If an employee, who suffers an on-the-job injury, works with the Railroad in reaching a peaceful settlement, the Railroad will:
 (a) pay his salary while he's off work;
 (b) pay whatever travel expenses are involved in getting appropriate medical care including travel from Laredo to medical specialists in San Antonio;
 (c) pay all medical expenses.
2. However if the injured employee makes a claim, files a lawsuit or hires a lawyer:
 (a) his salary won't be paid;
 (b) his travel expenses for medical treatment won't be paid;
 (c) but his medical bills will still be paid and were in this case to the tune of $23,135.00.

The Railroad argued, and the jury accepted, that they had a right to stop the salary and the travel expenses because there were "special benefits." They said that no one required them to do these things and they were done only for the good of the employee. They also describe the salary as simply an advance on the settlement proceeds, something like a loan. However, no papers were signed and there was really no requirement that the "loan" be repaid. Travel expenses should be treated similarly, the Railroad says. In short, what is voluntarily given can be voluntarily taken away and if the litigious employee and the compliant employee are treated differently, well, it is the employees' choosing. The Railroad admitted freely this was their policy and this is what happened in this case.

From a streetwise point of view, this carrot and stick philosophy makes some sense. Cooperate or be spanked. The plaintiff didn't cooperate because he chose to hire a lawyer and file a claim. Therefore, the majority of his benefits were yanked. Had Bouchet been willing to forego exercising his legal rights he would have been paid salary until a settlement was made and his traveling expenses would have continued to be paid. None of these facts are disputed. The problem with this philosophy, though, is that it is directly contrary to the Texas Labor Code, § 451.001.

■ The Code says that "a person may not ... discriminate against an employee" who hires a lawyer and institutes his claim, yet there is substantial evidence that the

Railroad did just this against Bouchet. No one contests Bouchet was injured on the job and his only sin is that he enlisted the legal system to get proper benefits for his injury. We acknowledge that the Railroad's position is that the FELA prohibits Texas laws from applying to it, but we cannot agree with this position.

Our legislature has passed a law which, in effect, says that an injured worker in Texas should not be put to the hard choice of accepting whatever benefits his employer may give him, or face severe repercussions if he tries to exercise his legal rights. Bouchet is a Texas citizen, working in Texas, injured in Texas, and undergoing treatment in Texas. We see no reason why Texas law should not apply. His compensation scheme is that of FELA. But the wrongful discrimination is controlled by Texas law. They are not contradictory. They are simply separate claims.

■ As all of the Railroad representatives agree that the Railroad treated people differently according to whether they exercised their legal rights or didn't we must conclude that the great weight and preponderance of the evidence is contrary to the jury's finding of no discrimination in question number 5.

We acknowledge that there is some evidence that the railroad did not discriminate—i.e., they paid all of his medical bills and there was disputed testimony over whether he still had his job (the Railroad said he did), but we must conclude the jury's answer to question 5 is against the great weight and preponderance of the evidence.

### Discrimination as a Matter of Law

■ We are asked by Bouchet to hold as a matter of law that there was "wrongful discrimination." We are reluctant to do that. Bouchet argues that the trial court should have granted his motion for new trial because the jury's failure to find that the railroad wrongfully discriminated against him is without any support in the evidence and that discrimination was proved as a matter of law. When reviewing a "matter of law" challenge, this court must employ a two part test. We first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. If there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition was established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). Furthermore, the jury's failure to find a fact need not be supported by any evidence, since the jury is free to disbelieve the witnesses of the party bearing the burden of proof. *Yap v. ANR Freight Sys., Inc.*, 789 S.W.2d 424, 425 (Tex.App.—Houston [1st Dist.] 1990, no writ); *see also* W. Wendall Hall, *Revisiting Standards of Review in Civil Appeals*, 24 ST. MARY'S L.J. 1045, 1136 (1993).

Having reviewed the record we find that there is some evidence of no discrimination. The evidence supporting the verdict shows that after Bouchet was injured on the job in 1987, he continued in his employ with the Railroad and may have still been employed with them at the time of trial. From the date he was injured until the time of trial, the Railroad paid Bouchet's medical expenses. Bouchet filed suit in December 1991 and received full salary until March of 1992 when his doctor did not release him for work. In December of 1992, Bouchet's salary was restored sixteen days before trial. Therefore, we find that there was enough evidence to prevent this court from finding discrimination as a matter of law.

We do agree with Bouchet that the jury's finding of no discrimination is against the great weight and preponderance of evidence. Therefore, we reverse that portion of the judgment dealing with wrongful discrimination and remand for a new trial on that issue.