The ESTATE of Diane MONTAG, by and through Michael MONTAG, her personal representative of the estate, and Michael Montag, individually, Plaintiffs,

and

Farmers Insurance Exchange, a reciprocal or inter-insurance exchange, and Farmers Insurance Exchange, a reciprocal or inter-insurance exchange as subrogee of the Estate of Diane Montag, and United of Omaha Life Insurance Company, a Nebraska corporation, as subrogee of the Estate of Diane Montag, Plaintiffs–Intervenors,

v.

HONDA MOTOR COMPANY, LTD., a Japanese corporation, American Honda Motor Company, Inc., a California corporation doing business in Colorado, and Honda Research and Development, Inc., a Japanese corporation, Defendants.

Civ. A. No. 92–S–135.

United States District Court,
D. Colorado.

June 9, 1994.

Michael J. Mirabella, Norman & Mirabella, Lakewood, CO, William James Barber, Quiat, Schlueter, Mahoney, Ross & Barber, Denver, CO, for the Estate and Michael Montag.

Gary D. Nicholas, Denver, CO, for Farmers.

John O. Rauch, John R. Sleeman, Downey, Rauch & Sleeman, P.C., Denver, CO, for Omaha.

John R. Trigg, Robert B. Hunter, Parcel, Mauro, Hultin & Spaanstra, P.C., Denver, CO, for defendants.

## ORDER

SPARR, District Judge.

THIS MATTER comes before the court on the Defendants' Motion in Limine to Exclude All Evidence of and References to Restraint Systems Consisting of a Three–Point Manual Safety Belt and an Airbag, filed May 10, 1994. The court has reviewed the motion, the Plaintiffs' Response, the entire case file, the arguments made by counsel in open court and in chambers on June 6, 1994, and the applicable law and is fully advised in the premises.

Defendants ask the court to exclude all evidence of and references to airbag restraint systems, including: (1) that airbag restraint systems were feasible, practical, or available in other 1988 model-year vehicles, (2) that Diane Montag's injuries would have been reduced or prevented if the 1988 Honda Prelude had been equipped with an airbag restraint system, and (3) that the 1988 Prelude is defective or unsafe because it was not equipped with an airbag restraint system. The Defendants believe that the Plaintiffs intend to introduce such evidence through their expert witness, Akio Takaoka. See Ex-

hibit E to Defendants' Motion In Limine. The Defendants proffer two reasons that the court should exclude all evidence of and references to airbag restraint systems. First, any claim that seeks to impose liability on the Defendants for not equipping the 1988 Prelude with an airbag restraint system is preempted by the National Traffic and Motor Vehicle Safety (the Safety Act) and Federal Motor Vehicle Safety Standard 208 (FMVSS 208). Second, the Plaintiffs should be precluded from raising any defect theories not expressed by Plaintiffs' experts in their expert reports at the time of endorsement. Defendants argue that only on March 1, 1994, the last day of discovery, did the Plaintiffs in any way allege that this 1988 Honda Prelude was defective because it was not equipped with an airbag restraint system.

The Plaintiffs respond with essentially four reasons that the Defendants' motion should be denied. First, Plaintiffs argue that the Defendants "abandoned" their preemption argument when they failed to file a summary judgment motion on the preemption issue. The court rejected this argument at the June 6, 1994 hearing. Second, the Plaintiffs argue that this is not a "no-airbag case." The court and the parties are in agreement that this is not a "no-airbag case." It is precisely for this reason that the Defendants seek to exclude the Plaintiffs' "no-airbag" evidence. Third, Plaintiffs argue that the Defendants are attempting to eliminate an essential element of the Plaintiffs' claim—that safer, cost-effective alternatives existed. However, before Mr. Takaoka raised the no-airbag theory of defective design in his March 1, 1994 deposition, the Plaintiffs' theories were that Mrs. Montag's vehicle was defectively designed because: (1) the door latch mechanism and lock were inadequate, and (2) the motion-sensing locking mechanisms were overridden at certain times. See Exhibits B, C, and D to Defendants' Motion In Limine; Stipulated Pre–Trial Order dated May 24, 1994; Amended Complaint dated June 5, 1992. Even without their no-airbag theory, the Plaintiffs have viable theories of design defect and evidence of safer, feasible alternatives. Fourth, Plaintiffs argue that, based on the Supreme Court's decision in *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), and the Safety

Act's savings clause (15 U.S.C. § 1397(k)), the Safety Act does not preempt design defect claims involving manual safety belts with airbags.

*Preemption by the Safety Act*

■ Article VI of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, Cl. 2. State law that conflicts with federal law is "without effect." *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617, citing *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the states are not to be superseded by federal law unless that is the clear and manifest purpose of Congress. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617, citing *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Therefore, the purpose of Congress is the "ultimate touchstone" of preemption analysis. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617, citing *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1309–10, 55 L.Ed.2d 443 (1978).

■ Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617, citing *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law or if federal law so thoroughly occupies a legislative field "as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617 (citations omitted). But, when Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," "there is no need to infer congressional intent to preempt state laws from the substantive provisions" of the legislation. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2618 (citations omitted).

Prior to *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2608, the Tenth Circuit found that the Safety Act impliedly preempted the plaintiff's claim for failure to install airbags, following the reasoning of *Wood v. General Motors Corp.,* 865 F.2d 395, 402 (1st Cir. 1988), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990). *Kitts v. General Motors Corp.,* 875 F.2d 787, 789 (10th Cir.1987), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990). Under the new constraints of *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2618, the Tenth Circuit's analysis of the Safety Act in *Kitts,* 875 F.2d at 787, would be limited to express preemption. *See Myrick v. Freuhauf Corp.,* 13 F.3d 1516, 1519–24 (11th Cir.1994). This court's analysis of the Safety Act in this case is therefore also limited to express preemption.

■ Together, Sections 1392(d) and 1397(k) of the Safety Act specifically address congressional intent as to preemption:

**§ 1392. Motor vehicle safety standards (d) Supremacy of Federal standards; allowable higher standards for vehicles used by Federal or state governments.** Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard....

**§ 1397. Prohibition against manufacture, sale, delivery, or importation of substandard vehicles and against rendering inoperative certain devices, elements of design or motor vehicle equipment (k) Continuation of common law liability.** Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.

15 U.S.C. § 1392(d); § 1397(k). In compliance with *Cipollone,* —— U.S. at ——, 112

S.Ct. at 2618, the court need not and does not consider an implied preemption analysis because the statute contains an express indicium of congressional intent regarding preemption. *See Myrick,* 13 F.3d at 1519–24.

■ If a statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' intent. *CSX Transp., Inc. v. Easterwood,* —— U.S. ——, ——, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993). The inquiry in this case is straightforward: the court asks whether the legal duty that is the predicate of the Plaintiffs' state tort law action constitutes a "safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard." *See Cipollone,* —— U.S. at ——, 112 S.Ct. at 2621.

■ Guided by the Tenth Circuit's analysis in *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 959 F.2d 158, 161–64 (10th Cir.), *cert. granted and judgment vacated,* —— U.S. ——, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992), *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177, 1179 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993), and *Kitts,* 875 F.2d at 787, this court believes that, after *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2618, the Tenth Circuit would find that Congress, through the Safety Act, has expressly circumscribed the area of motor vehicle safety standards and preserved it for federal law. Following the analysis of the preemption clauses in *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2621, and *Arkansas–Platte,* 981 F.2d at 1179, the court concludes that, with § 1392(d) of the Safety Act, Congress has expressly preempted all state tort claims that are "applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard." 15 U.S.C. § 1392(d). Although other courts have concluded that the language of the Safety Act is too ambiguous to manifest congressional intent to preempt common law tort claims under an express preemption analysis, *see Myrick,* 13 F.3d at 1526, this court believes the Tenth Circuit would find that the Safety Act expressly preempts the Plaintiffs' defective design claim based on the failure to install airbags.

The "savings clause," § 1397(k), does not change the court's conclusion that § 1392(d) expressly preempts the Plaintiffs' product liability claim alleging that the absence of an airbag rendered the vehicle's design faulty. The savings clause indicates that Congress did not intend to occupy the entire field of motor vehicle safety. Because of the savings clause, the Plaintiffs are able to sue on their non-preempted state law tort claims. In addition, the savings clause indicates that compliance with federal motor vehicle safety standards cannot be a complete defense to common law liability. The savings clause does not express any specific congressional intent to preserve state common law actions that a vehicle was defective because it lacked an airbag, effectively circumventing § 1392(d)'s prohibition of nonidentical state standards covering the same aspect of performance as a federal safety standard. *Wood,* 865 F.2d at 407. Congress did not express an intent to undermine the Safety Act through this general savings clause.

■ An additional reason for precluding the Plaintiffs from attempting to show that this 1988 Honda Prelude was defective because it was not equipped with an airbag restraint system is that this defect theory was not expressed by Plaintiffs' experts in their expert reports at the time of endorsement or at any time before the discovery cutoff. Not until the March 1, 1994 deposition of Mr. Takaoka did the Plaintiffs in any way introduce their theory that this 1988 Honda Prelude was defective because it was not equipped with an airbag restraint system. On October 22, 1993, at the Plaintiffs' request, the discovery cutoff was extended to March 1, 1994. In keeping with the court's requirements regarding endorsement of expert witnesses, expert reports, and discovery cutoffs, the Plaintiffs should be prohibited from introducing evidence that this 1988 Honda Prelude was defective because it was not equipped with an airbag restraint system.

Accordingly, IT IS ORDERED that the Defendants' Motion In Limine to Exclude All Evidence of and References to Restraint

578

Systems Consisting of a Three–Point Manual Safety Belt and an Airbag is GRANTED.