## TECHNOLOGY MARKETING CORPORATION,
### Plaintiff,

v.

## HAMLIN, INCORPORATED, Defendant.

### No. 97–C–078–S.

United States District Court,
W.D. Wisconsin.

Aug. 6, 1997.

Brian E. Butler, Stafford Rosenbaum Rieser & Hansen, Madison, WI, Leonard A. Nelson, Schoenberg, Fisher, Newman & Rosenberg, Chicago, IL, for Technology Marketing Corp.

Donald K. Schott, Quarles & Brady, Madison, WI, William S. DuFoe, Holland & Knight, Lakeland, FL, for Hamlin, Inc.

## MEMORANDUM AND ORDER

SHABAZ, Chief Judge.

Plaintiff Technology Marketing Corporation (TMC) commenced this breach of contract action in Hamilton County, Indiana, Superior Court, alleging that it is entitled to certain sales commissions under the terms of its representation agreement with defendant Hamlin, Incorporated and pursuant to Indiana Code § IC–24–4–7–7. The case was removed to the United States District Court for the Southern District of Indiana on the basis of diversity of citizenship, 28 U.S.C. § 1332, and subsequently transferred to this Court pursuant to a contractual choice of venue. The matter is presently before the Court on defendant's motion for partial summary judgment.

## BACKGROUND

Plaintiff TMC is an Indiana corporation which acts as a wholesale representative for manufacturers. Defendant Hamlin is a Wisconsin manufacturer in the business of making and selling sensors and reed switches used in electronic assemblies for automotive emergency air bag systems.

In September 1990 plaintiff and defendant entered into a representation agreement whereby plaintiff was appointed as defendant's exclusive sales representative to promote the sale of its products in the states of Indiana and Kentucky. Plaintiff was compensated under the agreement by payment of commissions for orders procured for defendant's products.

Section VIII of the Representation Agreement is entitled "Term and Termination." Section VIII provides in part as follows:

A. This Agreement goes into effect as of September 16, 1990 and shall continue in full force and effect for an initial term expiring September 16, 1991. Thereafter, this Agreement shall renew automatically for successive one year terms unless Company notifies Representative of an intent not to renew at least thirty (30) days before the applicable term expires. Either party may terminate this Agreement, with or without cause, upon thirty (30) days prior written notice thereof to the other.

B. Following termination or expiration of this agreement anything herein to the contrary not withstanding, Representative shall be entitled to commissions only with respect to orders accepted by the Company prior to the effective date of termination or expiration, and

only with respect to that portion of such orders as is due to be shipped before the expiration of twelve (12) months after said effective date....

On April 9, 1996 defendant sent to plaintiff a letter which provided in part as follows:

As you have been informed verbally, Hamlin has made the decision to utilize a direct company sales person to administer and support the account activities at Delco Electronics. Therefore, you are hereby advised that, pursuant to Section VIII.A of the Representation Agreement dated September 14, 1990 (as thereafter amended) between Hamlin, Inc. and Technology Marketing Corporation ("TMC"), TMC's appointment as a representative of Hamlin for purposes stated therein shall be terminated effective May 9, 1996. As provided in Section VIII.B, TMC will be entitled to commissions on all orders accepted by Hamlin prior to that date which are due to be shipped within twelve (12) months of May 9, 1996....

The agreement further provided that it was to be governed by the laws of the state in which the representative maintains its principal offices (i.e. Indiana) and that venue for any dispute would lie in Wisconsin.

Chapter 7 of Title 24 of the Indiana statutes dealing with trade regulations, consumer sales and credit is entitled "contracts with wholesale sales representatives." Section 24–4–7–7 entitled "revocable offer of commission" is potentially relevant here and provides as follows:

(a) If a principal makes a revocable offer of a commission to a sales representative who is not an employee of the principal, the sales representative is entitled to the commission agreed upon if:

(1) the principal revokes the offer of commission and the sales representative establishes that the revocation was for a purpose of avoiding payment of the commission;

(2) the revocation occurs after the sales representative has obtained a written order for the principal's product because of the efforts of the sales representative; and

(3) the principal's product that is the subject of the order is shipped to and paid for by a customer.

## MEMORANDUM

Plaintiff's complaint asserts a right to an additional commission under alternative theories. First, plaintiff asserts entitlement to commissions pursuant to the Representation Agreement for orders obtained prior to September 16, 1996 on the basis that defendant's termination of the contract was not effective until that date (Count II). Alternatively, plaintiff seeks to recover for orders obtained on or before May 9, 1996 in the event termination is found to have occurred on that date (Count IV). Plaintiff also advances parallel alternative claims asserting the right to commissions under IC 24–4–7–7 based on the same alternative termination dates (Counts I and III).

Defendant seeks summary judgment on Counts I and III on the basis that IC 24–4–7–7 is not applicable to the contractual relationship between plaintiff and defendant. Defendant also seeks summary judgment on Counts I and II arguing that under the terms of the contract termination was effective on May 9, 1996 as a matter of law. Plaintiff opposes both positions arguing for the opposite legal interpretations of the statute and contract.

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure.

A fact is material only if it might affect the outcome of the suit under the governing law. Disputes over unnecessary or irrelevant facts will not preclude summary judgment. A factual issue is genuine only if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Under Rule 56(e) it is the obligation of the nonmoving party to set forth specific

facts showing that there is a genuine issue for trial.

■ The parties agree that Indiana law applies to the dispute. Furthermore, neither party suggests that disputed facts might influence the Court's interpretation of the statute and contract at issue. Accordingly, the questions of contract interpretation and statutory construction based upon an undisputed set of facts present legal questions which may be resolved as a matter of law. *LTV Steel Co., Inc. v. Northwest Engineering & Const., Inc.* 41 F.3d 332, 334 (7th Cir.1994); *Trustees of First Union Real Estate Equity and Mortg. Investments v. Mandell,* 987 F.2d 1286, 1290 (7th Cir.1993).

The Court now addresses the two legal issues presented.

*Date of Effective Termination of the Contract*

■ It is defendant's position that the third sentence of Section VIII A of the Representation Agreement unambiguously permits the termination of the Representation Agreement at any time upon thirty days written notice. Plaintiff argues that the provision when read as a whole requires that termination may only be accomplished on the anniversary date of the Agreement. As in most jurisdictions the purpose of contract interpretation under Indiana law is to determine the parties intent as that intent was expressed in their written contract. *First Union,* 987 F.2d at 1289. If the contract is unambiguous it will be applied as written. Ambiguity exists when a reasonable person would find the contract subject to more than one interpretation. *Id.* at 1290. Making these determinations the Court must give the words their usual meaning unless the contract as whole requires different meaning and must make all attempts to interpret the contract so as not to render any terms ineffective or meaningless. *Id.*

There is nothing ambiguous about the third sentence of Section VIII A. It plainly provides that either party can terminate the agreement by giving thirty days written notice. Given its ordinary meaning there is nothing in the clause to suggest that notice can only be given prior to the anniversary date.

Furthermore, contrary to the position of the plaintiff, viewing the contract as a whole reinforces rather than undermines this plain meaning. The basic structure of Section VIII of the Representation Agreement includes the two concepts set forth in its title: "Term and Termination". The first two sentences of Section VIII A establish the term of the agreement and the third sentence provides separately for its termination. The contract presumes annual renewal unless defendant notifies plaintiff of its intent not to renew in which case the contract expires by its terms on its anniversary date. In addition, either party may terminate at any time on thirty days written notice. The fact that only the defendant has the right to force non-renewal of the contract but that either party may terminate makes it obvious that the two concepts are intended to be distinct. This structure is confirmed by repeated references in Sections VIII B and C to "termination or expiration" of the Agreement. This formulation would be completely unnecessary if expiration by non-renewal were the only means to end the relationship.

The interpretation providing for separate term and termination provisions is clearly in greatest harmony with the remaining terms of the contract. Furthermore, the contrary interpretation advanced by the plaintiff would render the sentences of Section VIII A contradictory and senseless. Specifically, that portion of the second sentence of Section VIII A which gives only the defendant the right not to renew the contract would be rendered completely superfluous if sentence three were found to apply to the non-renewal provisions. While it is true that the interpretation now adopted by the Court giving a broad right to terminate makes it unlikely that the non-renewal provision would be invoked, it does not render the two clauses inconsistent or meaningless.

Plaintiff's references to cases from other jurisdictions involving distinctly different and ambiguous contract provisions are inapplicable and unpersuasive. Accordingly, the Court finds that the contract provision at issue is susceptible to only one reasonable interpretation, and the contract in this case was effectively terminated on May 9, 1996.

*Application of IC 24–4–7–7*

██ The fundamental dispute between the parties is whether IC 24–4–7–7 applies to offers of commission included in bilateral contracts or applies only to unilateral contracts. Defendant urges that the reference to "revocable offer" within the section limits it to unilateral contracts.

██ Like the law of contract construction, statutory construction under Indiana law requires the court to enforce the intent of the legislature by reference to its language considering the statute as a whole. *Wilson v. Pleasant,* 660 N.E.2d 327, 337 (Ind.1995). Both the literal language of the statute and the obvious intent of the legislature was to extend IC 24–4–7–7 to the revocation of offers to pay commission embodied in a bilateral contract. As the term "offer" is commonly understood the contract between the parties clearly includes defendant's offer to pay a commission on orders procured by the plaintiff. Notwithstanding the bilateral nature of the contract the right to receive commissions is properly termed an offer because it is contingent upon the efforts by the plaintiff which results in the receipt and acceptance of an order by the defendant.

██ Furthermore, the obvious purpose of the statute is to prohibit a manufacturer from avoiding the payment of commissions under circumstances where a sales representative has fully performed and obtained an order which would otherwise entitle it to the payment of a commission. The statute is designed to prevent opportunistic behavior by the principal which would allow it to obtain the services of the agent without payment. Certainly, the relationship in this case might permit such behavior and is covered by the language and intent of the statute.

Defendant's position that the legislature intended to make a legal distinction between unilateral and bilateral contracts is untenable. First, this position is entirely inconsistent with the definitions of "principal" and "sales representative" found in IC 24–4–7–3 and IC 24–4–7–4, each of which requires a preexisting or bilateral contract between a principal and agent. These provisions demonstrate that the legislature intended and expected to have the entire chapter apply to relationships formed by bilateral contracts.

Furthermore, there is no evident purpose in distinguishing between unilateral and bilateral contracts in order to achieve the purpose of avoiding opportunistic behavior by a principal. The primary difference between a unilateral and bilateral contract is the representative's promise to use reasonable efforts to procure orders. There is no reason to believe that the Indiana legislature would have intended not to protect representatives merely because they had made such a bilateral promise. Given the prevalence of bilateral contracts in the sales representative arena and the express applicability of the statute to such relationships based on the definitions in Sections 3 and 4 it is absolutely clear that the legislature intended the prohibition in Section 7 to apply to this circumstance.

Contrary to defendant's suggestion, there is no inconsistency between Sections 5 and 7 of IC 24–4–7 as a result of this interpretation. Section 24–4–7–5 is directed to the concern that principals will not promptly pay commissions owed after their relationship with an agent is terminated. Section 24–4–7–7 is directed to an entirely different concern—opportunistic termination to avoid payment of commissions. It is entirely consistent that the Indiana legislature would have passed both sections and made them equally applicable to all sales representatives.

██ Defendant's final argument, that the reference in IC 24–4–7–7 to the "commission agreed upon" permits the principal to contractually supercede the statutory commission requirement, is meritless. Clearly the reference to "commission agreed upon" is merely a reference to the percentage commission which the principal had agreed to pay. That provision is not intended as a basis to override the rights of IC 24–4–7–7 as is evidenced by IC 24–4–7–8 which precludes contractual waivers of the rights granted by the chapter.

Accordingly, the Court finds that IC 24–4–7–7 applies to the relationship between plaintiff and defendant and may be invoked if all of the required elements are established by the plaintiff.

## ORDER

IT IS ORDERED that defendant's motion for partial summary judgment is GRANTED as to Counts I and II of plaintiff's complaint and is in all other respects DENIED.